IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TANYA S. E.,[1]

        Plaintiff,

v.

COMMISSIONER of SOCIAL SECURITY,

        Defendant.

Case No. 21-CV-01236-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Disabled Widow's Benefits (DWB) benefits pursuant to 42 U.S.C. § 423.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and DWB on October 24, 2019, alleging disability beginning December 18, 2017. (Tr. 236-39). After holding an evidentiary hearing, ALJ Michael S. Worrall denied the applications on February 2, 2021. (Tr. 14-27). The Appeals Council denied review, and the decision of the ALJ became the final agency

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. Whether the ALJ erred by mischaracterizing Plaintiff's past relevant work and job duties and in concluding she could perform job duties she had not previously done.

2. Whether the ALJ erred by failing to comport with SSR 16-3p's requirements and failed to identify the evidentiary basis for his evaluation of Plaintiff's symptoms.

3. Whether the ALJ erred by failing to comport with 20 CFR 404.1520c and SSR 96-8p and failed to identify the evidentiary basis for his assessment of Plaintiff's residual function capacity (RFC).

## APPLICABLE LEGAL STANDARDS

To qualify for disability benefits, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform

his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review

is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

ALJ Worrall followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. (Tr. 17). The ALJ found that Plaintiff had severe impediments of lumbar spine degenerative disc disease, diabetes mellitus, hypertension, and obesity. *Id*.

The ALJ determined Plaintiff had the RFC to perform light work. (Tr. 21). The ALJ found that in performing her work, Plaintiff could sit, stand, or walk for 6 hours in each 8-hour workday, she could push and pull as much as she could lift, and she could frequently handle and finger with bilateral upper extremities, but she could not be exposed to extreme cold or vibration. (Tr. 21).

The ALJ relied on the testimony of a vocational expert (VE). The VE classified Plaintiff's past work under fast-food manager (DOT Number 185.137-010), which is classified at the light exertional level under the Dictionary of Occupational Titles (DOT) but "as performed by the claimant, was medium exertional work." (Tr. 26). The ALJ noted that claimant had to lift "about 50 pounds" as a swing manager. (Tr. 26). Based upon the VE's testimony the ALJ ruled that Plaintiff was not disabled because she was able to do her past relevant work as a fast food manager as that job is generally performed in the national economy, and thus did not qualify for benefits. (Tr. 27).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of Plaintiff's arguments, the Court will omit a discussion of the medical evidence.

In a written report submitted in December 2019, plaintiff detailed her past job as a "kichen manager" of a restaurant. (Tr. 267-68). In that position, Plaintiff oversaw and assisted crew with their jobs, swept the floors, cleaned dishes, would "pick up slack" of other employees, and would assist in unloading the delivery truck, all of which involved regular bending and frequently lifting 25 pounds. *Id.* The report indicates that Plaintiff used machines, tools or equipment, supervised employees, and was considered a lead worked. *Id.* The report further indicates that Plaintiff did not hire or fire employees, utilize technical knowledge or skills, write, or complete reports. *Id.*

Plaintiff was represented by an attorney at the evidentiary hearing in December 2020. (Tr. 33).

Plaintiff testified that she worked as a "swing" manager at McDonald's for most of her life. (Tr. 38-39). Pay records indicate that the McDonalds Plaintiff was employed at was in Harrisburg, Illinois. (Tr. 241). Plaintiff further testified that her position included ensuring that "everything was turned on" in the kitchen, that "things were getting prepped," and that the freezer was stocked with meat. (Tr. 39). Plaintiff also stated that her position included continuous bending and lifting to unload delivery trucks. *Id.* Plaintiff testified that she would "pick up the slack," work at the registers, regularly clean the restaurant, and "sometimes" serve meals or

supervise other employees. (Tr. 39-40, 47-48). Plaintiff indicated that she did not set schedules, did not do payroll, and would seldomly handle any money or deposits. (Tr. 40). Plaintiff testified and the ALJ found that Plaintiff had to lift 50 pounds as a swing manager. (Tr. 26, 40).

A vocational expert (VE) was present at the evidentiary hearing in December 2020 and testified. (Tr. 35-36, 55-59). The VE classified Plaintiff's job with McDonald's as a fast-food manager, DOT 185.137-010. She described the job as light and skilled with an SVP of 5 per the DOT. (Tr. 56). She further testified that as performed the work was medium exertion level. *Id.*

The ALJ asked a hypothetical question which corresponded the RFC assessment. (Tr. 56). The VE testified that Plaintiff was able to do her past job as a fast-food manager as it is generally performed but not as the Plaintiff performed it. (Tr. 56-57). The ALJ also asked a hypothetical question which corresponded with the Plaintiff's history should she be found restricted to sedentary work. (Tr. 57). The VE testified that there would be no transferrable skills. *Id.*

Plaintiff's counsel then questioned the VE regarding her opinion. Counsel asked if the VE had considered any other positions in the DOT such as fast-food cook (DOT 313.374-010). (Tr. 58). The VE responded that she had and that she classified this work as a manager because Plaintiff oversaw others and picked up where other people did not do the job. *Id.* Counsel expressed his belief that the classification of the Plaintiff's past work was incorrect. *Id.*

## ANALYSIS

In the interest of judicial economy, this Court only reaches issue one presented

by Plaintiff as the Court finds such issue raises sufficient grounds upon which to remand this case for further proceedings.

The VE testified that plaintiff's past job as a manager at McDonald's fit under the DOT description of Manager, Fast Food Services, but that it was performed at a medium exertion level by Plaintiff.[2] ALJ Worrall agreed with the VE's testimony in his decision. The ALJ further found that plaintiff was not disabled because she could perform the functions of her past work as a fast-food manager as that job is usually performed in the national economy. Plaintiff contends that her manager job was a composite job, and the ALJ erred in finding that she could perform her past job as it is generally performed in the national economy.

According to the *Dictionary of Occupational Titles*, the job of Manager, Fast Food Services (DOT 185.137-010) involves the following:

> Manages franchised or independent fast food or wholesale prepared food establishment: Directs, coordinates, and participates in preparation of, and cooking, wrapping or packing types of food served or prepared by establishment, collecting of monies from in-house or take-out customers, or assembling food orders for wholesale customers. Coordinates activities of workers engaged in keeping business records, collecting and paying accounts, ordering or purchasing supplies, and delivery of foodstuffs to wholesale or retail customers. Interviews, hires, and trains personnel. May contact prospective wholesale customers, such as mobile food vendors, vending machine operators, bar and tavern owners, and institutional personnel, to promote sale of prepared foods, such as doughnuts, sandwiches, and specialty food items. May establish delivery routes and schedules for supplying wholesale customers. Workers may be known according to type or name of franchised establishment or type of prepared foodstuff retailed or wholesaled.

---

[2] Step four requires an ALJ to determine if a plaintiff can perform their past relevant work experience either as actually performed or as it is generally performed in the national economy. *See Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019); SSR 82-61.

The DOT classifies the job of Manager, Fast Food Services as light as generally performed. Light work requires lifting no more than 20 pounds, frequently carrying objects weighing up to 10 pounds, and a good deal of walking or standing. 20 C.F.R. §404.1567(a).

The job of Cook, Fast Food (DOT 313.374-010) is medium, and has the following requirements:

> Prepares and cooks to order foods requiring short preparation time: Reads food order slip or receives verbal instructions as to food required by patron, and prepares and cooks food according to instructions. Prepares sandwiches [SANDWICH MAKER (hotel & rest.) 317.664-010]. Prepares salads and slices meats and cheese, using slicing machine, [PANTRY GOODS MAKER (hotel & rest.) 317.684-014]. Cleans work area and food preparation equipment. May prepare beverages [COFFEE MAKER (hotel & rest.) 317.684-010]. May serve meals to patrons over counter.

In determining whether a claimant can perform the functional demands and job duties of her past job, the "*Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT--to define the job as it is *usually* performed in the national economy." SSR 82–61, 1982 WL 31387, *2 (emphasis in original). However, "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." *Ibid.* Under the agency's Program Operations Manual, "a composite job does not have a DOT counterpart" so it should not be evaluated "at the part 4 step considering work 'as generally performed in the national economy.'" POMS DI 25005.020(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (visited Feb. 16, 2023). Thus,

a composite job should only be evaluated, at step four, as the job was actually performed by the given plaintiff.

Plaintiff stated in her report that her job as a "kichen manager" required that she assist the crew where needed, cleaned various aspects of the restaurant, utilized tools and machinery, and unloaded delivery trucks. (Tr. 267-68). Her testimony elaborated on the duties which she was required to perform and included preparing the kitchen and serving customers. (Tr. 39-40, 47-48). Plaintiff also stated that she did not set schedules, hire or fire employees, and that she only occasionally handled any money related tasks. (Tr. 40). There is conflicting information as to the extent of Plaintiff's time spent supervising other employees. (Tr. 40, 268). The Commissioner does not call into question that Plaintiff's job at McDonald's did, in fact, require Plaintiff to perform such duties as she described in her report and testimony.

Supposing that Plaintiff did spend a majority of her time supervising other employees while completing the tasks required of her, such supervision would be the only activity regularly conducted by Plaintiff that falls within the Manager job description (DOT 185.137-010). Further, many of Plaintiff's responsibilities fall within the purview of Cook, Fast Food (DOT 313.374-010) such as cleaning, serving customers, and preparing the kitchen. Therefore, it seems evident that Plaintiff's position did not fall entirely within the bounds of the manager position, as purported by the VE.

The Commissioner contends that Plaintiff's argument, that her position was a composite job, fails for three reasons. First, that the VE was aware of Plaintiff's work and failed to classify it as a composite job. Second, that Plaintiff's testimony does not

Page 10 of 13

show that her position was a composite job. Third, and finally, this Court's role does not extend to determining that the job of Plaintiff was a composite job.

The Commissioner's first argument fails. The ALJ has an affirmative duty to identify and obtain an explanation when a conflict exists between the testimony of a VE and information in the DOT. *See Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006); SSR 00-4p, 200 WL 1898704, *2. The Commissioner correctly notes that when a Plaintiff fails to identify a conflict at the hearing, there is not reversible error unless the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2008), citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008); *Barnett v. Colvin*, No. 13-cv-781-CJP, 2014 WL 7450077 *7 (S.D. Ill. Dec. 30, 2014).

In the Court's view, not only were the conflicts between the VE's testimony and the DOT blatantly obvious, but the Plaintiff also identified the conflict when her counsel stated that he disagreed with the VE and that claimant's past work was better described elsewhere in the DOT. (Tr. 59). Conflicts between the VE's testimony and the DOT are apparent throughout the transcript of the hearing. For example, upon being asked a hypothetical corresponding to Plaintiff's RFC assessment, the VE stated that Plaintiff could not perform Plaintiff's past work as she performed it. (Tr. 56-57). Further, the VE agreed with Plaintiff's counsel that the lifting requirements of Plaintiff's position more accurately described the description of a cook. (Tr. 58). Most strikingly, the VE acknowledged that a multitude of the responsibilities of a manager were absent in Plaintiff's position. (Tr. 58-59) Thus, although counsel did not use the language "composite job," his questions along with the VE's testimony

were sufficient to make the conflicts obvious and place the affirmative burden on the ALJ to obtain an explanation of such conflicts. Therefore, because the ALJ had an affirmative duty to obtain an explanation of conflicts between VE testimony and the DOT, which he failed to do, and because the conflicts were obvious in nature this Court may find reversible error.

The Commissioner's third argument is well taken and renders the second argument made by the Commissioner moot. This Court's role does not extend to determining if Plaintiff's position was a composite job; however, remand is appropriate where testimony during the hearing should have alerted the ALJ that the claimant's past work is made up of more than one job. *See Kimberly L.D. v. Comm'r of Soc. Sec.*, 2019 WL 247411, at *5 (S.D. Ill. Jan. 17, 2019); *e.g. Glenda M. D. v. Kijakazi*, 2022 WL 3053547, at *5-*6 (S.D. Ind. Aug. 2, 2022); *Michalski v. Berryhill*, 2017 WL 4081905, at *5-*7 (E.D. Wis. Sept. 14, 2017); *Cabaniss v. Colvin*, 2014 WL 7450435, at *12 (N.D. Ill. Dec. 30, 2014); *Lipke v. Astrue*, 575 F. Supp. 2d 970, 982–83 (W.D. Wis. 2007). If the Plaintiff's job at McDonald's was indeed a composite job, the ALJ erred in finding, at step four, that the Plaintiff could do the job as it is generally performed in the national economy because composite jobs have no national equivalent and must be analyzed on the basis of how they were performed by the given plaintiff.

The ALJ is reminded that a job "must not be described so broadly as to encompass a range of physical and mental abilities some of which the applicant may not have." *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). Additionally, "it is an error for the ALJ to classify an occupation 'according to the least demanding

function.'" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985)); *see also Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004).

The Court wishes to note that this Memorandum and Order should not be construed as indicating that this Court believes Plaintiff to be disabled, or that she is entitled benefits. The Court has not formed an opinion in that regard and leaves such issues to be determined upon further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for Disability Insurance Benefits and Disabled Widow's Benefits is **REVERSED** and **REMANDED** to the Commissioner for further proceedings not inconsistent with this decision.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 14, 2023**

> s/ *Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**